No. 86-135

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

IN RE THE MARRIAGE OF

JAMES L. CANNON,

          Petitioner and Respondent,

     and

PATRICIA R. CANNON,

          Respondent and Appellant.

_____

APPEAL FROM:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone,
              The Honorable Diane Barz, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Berger Law Firm; Chris J. Nelson, Billings, Montana

     For Respondent:

          Sandall, Cavan, Smith, Howard & Grubbs; John J. Cavan,
          Billings, Montana

_____

                              Submitted on Briefs: June 12, 1986

                                   Decided:  August 21, 1986

Filed: AUG 21 1986

_____
                       Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The wife appeals the maintenance award in this dissolution of marriage. The District Court for Yellowstone County awarded her maintenance of $500 per month until husband's retirement, or her death or remarriage. We affirm.

The issue is whether there is substantial support in the evidence for the amount of maintenance awarded. The parties have stipulated to withdraw a second issue originally briefed, regarding distribution of personal property.

After a two-day bench trial, the court made lengthy findings and conclusions. It found that husband and wife were married in 1956. At the time they were married, the husband had graduated from college with a degree in geology and the wife had graduated from college with a degree in home economics and interior decoration. They have four children, all of whom are now adults. The wife was a homemaker throughout the marriage. The family lived in Colorado, Texas, and Montana, where the husband was employed as a geologist for various oil companies. At the time of trial, husband was employed in Billings. His 1984 federal income tax listed his gross income as $74,022.

The court found that the value of the parties' net marital estate was $288,728, which it divided one-half to each party. The husband received the marital home. The bulk of the value of the wife's share of the estate is $144,364 from a Dean Witter account. The court ordered that the husband continue to pay the expenses of the two children in college. It also awarded the wife a portion of the husband's retirement benefits.

The court further found that the wife is an only child and is very attached to her mother, with whom she had lived until she married at age 29. During the parties' marriage the mother lived with them for two years in Denver and Houston until she returned to work in Billings. The wife moved in with her mother during the dissolution proceedings. Her mother is self-supporting.

The wife submitted a statement of monthly expenses of $1,397.95. The District Court found that those expenditures did not accurately reflect the standard of living enjoyed during the marriage. It found that if the wife's share of the income-producing portion of the marital estate were safely invested it would yield $12,600 to $22,400 annually. It awarded maintenance of $500 per month. The court also found that there was a good possibility that the wife could, if she desired, find full or part-time employment to supplement her income from the marital estate. The court stated that the wife had no intention of seeking any type of employment, however.

Once it has been determined, as it has here, that a maintenance award is proper, Section 40-4-203(2), MCA, sets forth the criteria used in setting a maintenance amount:

> (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:
> (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
> (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

> (c) the standard of living established during the marriage;
> (d) the duration of the marriage;
> (e) the age and the physical and emotional condition of the spouse seeking maintenance; and
> (f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

The scope of this Court's review is determining whether the District Court has properly considered the factors listed in the statute, and whether there is substantial evidence to support the findings.

The wife cites Marriage of Cromwell (1979), 180 Mont. 40, 588 P.2d 1010, for the rule that the standard of living established during the marriage will be used in setting a maintenance amount. She argues that owning her own home is part of her established standard of living and that she is entitled to be in the same position as the husband, having only a small mortgage left to pay on a home. She plans to buy a new car and use $70,000 of her Dean Witter money to purchase her mother's 4-bedroom home. The record does not establish that such purchases are necessary to maintain her standard of living. We conclude that in setting the amount of maintenance the court was not required to accept the wife's plan to buy a new car and to spend $70,000 for purchase of her mother's home.

The wife contends there is not substantial evidence to support the District Court's award to her of $500 per month in maintenance, since she listed her monthly expenses at $1,397.95 and she did not list any amount for housing or car payments. She testified that she intended to continue living with her mother following the dissolution. The husband presented testimony by a stockbroker that if the wife invested her Dean Witter account money in tax free treasury bonds,

4

it would yield $12,250 per year. She described other safe investments which would approximately double that return. Even if we assume the lower figure, that along with the $500 in monthly maintenance would cover the expenses the wife has listed. Additionally, the District Court found that several items listed as expenses did not accurately reflect the standard of living enjoyed by the wife during the marriage. The wife's testimony on cross-examination supports the District Court's finding that a portion of the expenses listed were not for the wife's benefit, but for the benefit of the parties' children. These included $200 per month for gifts and $100 per month for telephone expenses.

The wife also listed as monthly expenses $150 for utilities, $9.75 for newspaper, $250 for food, and $7.75 per month for trash pickup. The court found that these expenses "contemplate the cost of those items for both [the wife] and her mother. The court finds that under those circumstances, the mother will contribute reasonably to some of those expenses, namely utilities, house maintenance and food." That finding is supported by the wife's testimony on the bases for the expenses she listed and on her mother's financial self-sufficiency. The court also found the wife's $200 expense for clothing each month unreasonable, particulary since she is not employed outside the home and "does not require an extensive wardrobe for any reason."

The wife also argues that the District Court cannot presume that she would be able to find a job. The expert testimony was that because of her age she would probably not be able to obtain employment in Billings. We have carefully reviewed the District Court's findings and have concluded that the court did not set the maintenance amount based on an

5

assumption that the wife would find a job. The court found that the wife "intends to make no effort whatever" to find employment.

We conclude that the District Court's extensive findings demonstrate that, in setting the amount of maintenance, it considered the relevant factors set out in § 40-4-203(2), MCA: the wife's financial resources including marital property apportioned to her, her ability to meet her needs independently, the standard of living established during the marriage, the duration of the marriage, the age and physical and emotional condition of the wife, and the ability of the husband to pay maintenance. The District Court is not required to draw up a monthly budget of the wife's reasonable expenses. We hold that there is substantial support in the evidence for setting the maintenance amount at $500 per month. We affirm.

_____<br>Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices