No. 87-325

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

IN RE THE MARRIAGE OF
JANICE B. TOW,

       Petitioner and Respondent,

  and

LINDLEY R. TOW,

       Respondent and Appellant.

---

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Keller & German; Robert S. Keller, Kalispell, Montana

    For Respondent:

        Randy K. Schwickert, Whitefish, Montana

---

Submitted on Briefs:  Oct. 22, 1987

Decided:  December 24, 1987

Filed: DEC 24 1987

_Ethel M. Harrison_

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Lindley R. Tow appeals from an order of the District Court, Eleventh Judicial District, Flathead County, awarding his ex-wife, Janice B. Tow maintenance payments and attorney fees. We remand.

The issues on appeal are:

1. Did the court err in its determination that the wife required maintenance and in awarding the amount it did?

2. Did the court err in awarding the wife attorney fees?

Lindley and Janice Tow were married in 1948 and divorced on May 29, 1987. They have three children all of whom are over eighteen. At the time of separation in 1983, both were in their late fifties. Janice is in good health. Lindley has suffered from depression and anxiety since 1984 and is currently under a psychiatrist's care. His prognosis for recovery is good.

Until his retirement in January, 1983, Lindley owned a Marine Survey and Casualty Insurance Company in Minnesota. At the outset of this action, Janice was a certified medical technologist and had worked part-time and full-time throughout the marriage. She ceased working in that field twelve years ago and at present has let her certification lapse. She has been actively involved in real estate sales since summer, 1984, and shows considerable enthusiasm and promise.

The couple has considerable assets. The husband had inherited a farm located in Minnesota (known as the Brewster farm) which he had sold in 1981 and due to the depressed farm economy bought back and rented in 1985. This is his main

source of income. It is valued at $128,000.00. Both parties owned 78 acres in Wisconsin with a value of $800.00 per acre. The family home in Minnesota was sold in 1981 from which each received $650.00 per month until February, 1987, when both received a $13,500.00 balloon payment. Both owned personal property and vehicles with combined value of over $30,000. In addition, just before the wife filed for dissolution, the couple bought property in Flathead County which is now listed for sale at $165,000.00. The property settlement which is not being contested divided the assets and cash in the following manner:

|  | Petitioner (Janice) | Respondent (Lindley) |
| --- | --- | --- |
| Personal Property | 13,565.00 | 15,585.00 |
| Sale of Minnesota home | 19,812.89 | 19,812.89 |
| Brewster farm | | 128,000.00 |
| Wisconsin acreage: | | |
|   40 acres to Petitioner | 32,000.00 | |
|   38 acres to Respondent | | 30,400.00 |
| Bank account | | 3,643.10 |
| Projected net sale proceeds from Flathead Lake property | 48,726.07 | 48,726.07 |
| Petitioner's inheritance | 17,544.00 | |
| Respondent's payments* on Flathead property | | 20,000.00 |
| Boat | 2,750.00 | 2,750.00 |
| TOTAL: | 134,397.96 | 268,917.06 |

* It was agreed that the respondent Lindley would recover his payments on the Flathead property. Petitioner's inheritance represents Janice's net inherited contribution to the marital estate. Both these amounts are to be paid out of the Flathead sale proceeds when sold. The balance will then be divided equally. Each also owns a vehicle with a stipulated equal value.

After a hearing on the petition for dissolution, the trial court awarded the petitioner Janice maintenance of $275.00 per month for the period of January 10, 1986 through

December, 1986 and $925.00 per month thereafter. The court also awarded petitioner attorney fees.

Lindley argues that the trial court abused its discretion in awarding Janice maintenance at all and certainly in awarding the amounts it did. First, the appellant maintains that his ex-wife's property settlement is sufficient to provide for her reasonable needs and in the alternative if it is not it is because her needs are unreasonable and she has failed to obtain appropriate employment. He also contends that the court failed to consider the amount of assets available to Janice and the resources available to meet his own needs after the award of maintenance.

The appropriate standard of review has been stated by this court several times. Most recently in Re Marriage of Hall (Mont. 1987), 690 P.2d 685, 686, 44 St.Rep. 1321, 1323, we stated:

> At the outset, we yet again repeat that this Court's function on appeal is extremely limited. Section 40-4-202, MCA, is of necessity a flexible statute which vests a good deal of discretion in the district court. Given the infinite varieties of factual situations presented by parties to dissolution proceedings, trial judges must enjoy the latitude to address each case individually, with an eye to its unique circumstances.

> As stated by this Court, our functions are as limited as the District Court's functions are broad. We have concluded that in a property distribution review in marriage dissolution, this Court will reverse a district court only upon a showing that the district court has acted arbitrarily or has committed a clear abuse of discretion, resulting in either instance in substantial injustice. See In Re Marriage of Hundtoft and cites therein. We choose not to use the phraseology "without employment of conscientious judgment or exceeded the bounds of reason" from Hundtoft because it does not assist in reviewing the actions of the lower court.

In Re Marriage of Hall, 740 P.2d at 686.

Under § 40-4-203(1), MCA, maintenance may be awarded only if the spouse seeking it "lacks sufficient property to provide for his reasonable needs; and is unable to support himself through appropriate employment . . .."

The term "sufficient property" has been interpreted to mean income-producing property rather than income-consuming property. In Bowman v. Bowman (Mont. 1981), 633 P.2d 1198, 1200, 38 St.Rep. 1515, 1518; In re Marriage of Herron (1980), 186 Mont. 396, 407-08, 608 P.2d 97, 103. The District Court did not specifically find what properties were income-producing or income-consuming. It is evident, however, that the trial court did consider the income-producing nature of Janice's property in determining whether maintenance was proper. In evidence were projections of the petitioner's income which clearly assume that wife's properties will be sold thereby being converted into income-producing assets. While we do not condone the trial court's lack of a specific finding here, we will not require it in this case. However, for future clarity and ease of appellate review, we will require a specific finding regarding the nature of the properties owned by the maintenance seeking spouse.

Next appellant Lindley contends that his ex-wife's needs are unreasonable. The District Court found that Janice's monthly expenses totaled $2,383.32. This figure includes a new car payment, a new house payment and $410.00 worth of monthly business expenses. Her monthly income for 1985 was $1,838.47. Implicit in the trial court's award of maintenance is a finding that these were reasonable expenses. Lack of a specific finding is not necessarily an abuse of discretion. Marriage of Madson (1978), 180 Mont. 220, 224, 590 P.2d 110, 112. This case is on all fours with our

- 5 -

Opinion in In re Marriage of Forney (Mont. 1986), 716 P.2d 635, 43 St.Rep. 637, where we refused to overturn the trial court's finding that purchase of a new car and house by the maintenance-seeking spouse after the separation of the parties was reasonable. Here, the appellant has provided little evidence to establish what would be reasonable. The wife's house is small and was priced at $39,000.00 in 1985 and it is conceded by the appellant that her new business necessitates a newer car. These are not unreasonable.

Appellant additionally contends that the business expenses cited by the wife and her car expense because it is business-related are not proper expenses to be considered in determining her reasonable needs. We find no case law on this point and appellant cites none. We will not punish the wife's efforts to become self-supporting by denying her reasonable business expenses. Her income as a real estate agent is completely commissions-based. This is to be differentiated from the traditional salary-based job which entails no expenses on the part of the employee.

Appellant next contends that the wife has purposely chosen inappropriate employment as a real estate agent rather than return to her past vocation as a medical technologist. Appellant is correct in noting that the term "appropriate employment" as used in § 40-4-203(1)(b) contains a component connected to the standard of living enjoyed by the parties during the marriage. In re Marriage of Madson, 590 P.2d at 112. The husband testified that their standard of living had been "magnificient." But he also testified that to maintain such a lifestyle he had to borrow money and sell family assets. It is clear that neither party can maintain their previous standard of living and there is little value in pursuing that question further.

Appellant argues that wife should have returned to her prior vocation as a medical technologist rather than engage in a new profession. The record shows that she did investigate the possibility of doing this type of work again but found no opportunities. She also chose not to return to this work because she had become "tired of it" and feared that her performance in a profession of such a life and death nature would suffer. The District Court found that Janice was "unable to support herself by employment in a manner which would meet her needs." Although the wording differs from that of § 40-4-203, MCA, when taken with the court's recognition of Janice's concerns about becoming a medical technologist again and her efforts in her current job, it does not show an abuse of discretion in awarding maintenance. We affirm the District Court's decision to award maintenance.

The next issue concerns whether the amount and duration of the alimony was proper. The appellant takes issue with several of the District Court's findings of fact, in large part arguing that the court simply ignored his lack of resources and subsequent inability to meet his needs while paying maintenance.

The District Court must consider all the following factors in making a maintenance determination:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) the standard of living established during the marriage;

(d) the duration of the marriage;

(e) the age and the physical and emotional condition of the spouse seeking maintenance; and

(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Section 40-4-203(2), MCA.

The trial court made extensive findings concerning the financial condition of both parties. Certain of these findings do not conform to the statutory requirements or are incorrect. The record shows, and the court noted, that although Janice received less total assets from the property settlement she received substantially the same amount of assets as Lindley when inherited property is excluded. The District Court failed to consider this. The court found that the husband would receive $248,917.04 in cash and assets available for investment while the wife would receive $134,397.94, little of it in cash. The main difference between what the two parties received is the husband's inherited farm in Minnesota. One look at the division of assets shows that the parties have substantially the same type of assets available to them for investment. Yet the court did not consider that the wife's assets were available to her for investment as well. This Court recognizes that the maintenance-seeking spouse's ability to invest his or her assets is a valid consideration when awarding maintenance. In re Marriage of Cannon (Mont. 1986), 723 P.2d 951, 953, 43 St.Rep. 1517, 1519.

The payor spouse's ability to meet his needs while paying maintenance must also be considered by the trial court. Section 40-4-203(2)(f), MCA. At the time of hearing Lindley was living off rental monies from his Brewster farm. He was also receiving payments of $650.00 per month from the sale of his home in Minnesota. This gave him an annual income of $20,422.50 for 1985 and 1986. The court found his

- 8 -

expenses to be $1,680.25 per month or $20,163.00 annually. This leaves him with a surplus of $259.50 a year. It is impossible under the facts of this case for appellant to pay the maintenance required by the court.

The District Court noted that certain large expense items will eventually diminish, particularly doctor bills and property taxes, leaving Lindley with an even larger surplus. Appellant argues that this is pure speculation and cannot be the basis for the court's finding but his own testimony is that his depression would eventually "clear up" given time. This is not so speculative that the court cannot consider it and is similar to income projections. See Gall v. Gall (1980), 187 Mont. 17, 20, 608 P.2d 496, 498.

One item that is perfectly concrete is the end of the $650.00 monthly payments for the sale of the parties' Minnesota home. Each party was to receive a balloon payment in 1987 of $13,500.00. The District Court noted that both parties' incomes would decrease after 1987 but recognized that Lindley would receive extra income from the balloon payment with which he could meet his expenses and provide maintenance. The record does not show that the court considered that Janice would also receive such a payment with which she could meet some of her expenses. The court simply increased the maintenance payments by $650.00 to a total of $925.00 per month. After 1987 the husband's only income will be from his Brewster farm for the few years until he begins receiving social security or until the Flathead property is sold at which time both parties would receive increased income.

It appears to this Court that the petitioner-wife Janice would have Lindley sell his only current source of steady income in order to support her. We will not require him to do this.

Appellant Lindley also contends that the court erred in awarding Janice attorney fees. The standard adopted by this Court with regard to attorney fees is one of abuse of discretion. In re Marriage of Gallinger (Mont. 1986), 719 P.2d 777, 783, 43 St.Rep. 976, 984. Due to the errors previously discussed we cannot say that the District Court's finding of an award of attorney fees is supported by sufficient evidence.

We remand this case to the District Court for a redetermination of the amount of maintenance the husband must pay and for reconsideration of the award of attorney fees.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

- 10 -