No. 94-119

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

LONA "DIANNE" CHEW,

          Petitioner and Appellant,

     and

RAYMOND CHEW,

          Respondent and Respondent

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                In and for the County of Lincoln,
                The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

          For Appellant:

          S. Charles Sprinkle, Douglas & Sprinkle, P.C.,
          Libby, Montana

          For Respondent:

          Stephen H. Dalby, Sverdrup & Barnes, Libby, Montana

Submitted on Briefs:  December 8, 1994

Decided:  January 18, 1995

Filed: JAN 18 1995

CLERK OF SUPREME COURT
OF MONTANA

_____
                  Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The parties' marriage was dissolved by the District Court for the Nineteenth Judicial District, Lincoln County, Montana. Lona "Dianne" Chew appeals and Raymond Chew cross-appeals. We vacate in part, but otherwise affirm the judgment of the District Court.

The issues are:

1. Did the District Court's method of dividing the marital estate constitute an abuse of discretion?

2. Do the restrictions imposed against Dianne with respect to maintenance constitute an abuse of discretion?

3. Is the award of maintenance to Dianne an abuse of discretion?

Lona "Dianne" Chew (Dianne) and Raymond Chew (Ray) were married for approximately twenty-five years. Their children are now adults. Ray and Dianne agreed to a disposition of their personal property. However, they disagreed on the disposition of their real property and on whether Dianne is entitled to maintenance.

At the time of trial, Ray received $824 per month in Social Security benefits, $466.76 per month in disability benefits, and $890.55 per month from the sale of property in California. He has been unable to work since 1980 as a result of an injury and will not be employable in the foreseeable future. Dianne was seasonally employed as a fire prevention aide for the Montana Department of State Lands. At the time of trial, she had undergone a double mastectomy and was preparing for related cosmetic surgery.

The District Court declared that property owned by the parties in Utica, Montana, and in California was not part of the marital estate. The Utica property is a partial interest in a ranch which Dianne inherited. The court declared it to be her sole property. The California property is a home deeded to Ray by his mother, who moved in with Ray and Dianne when she was no longer able to take care of herself. The home has been sold under a contract, with a balloon payment due in August 1996. The court declared it to be Ray's sole property.

The court awarded Ray possession of the family home in Libby, Montana. It ordered him to pay Dianne one-half of the sale price of the family home less certain deductions; however, it did not require Ray to do this until he receives the balloon payment on the California property in 1995 or 1996. The court also ordered Ray to pay Dianne one-half of his $466.76 monthly pension benefit for life. It ordered him to pay Dianne $850 per month in maintenance for four years "unless she dies, remarries or cohabits with another (for the greater portion of any six month period), in which case Ray's duty to pay maintenance shall cease." Additionally, the court ordered Ray to pursue a claim for workers' compensation and awarded Dianne one-half of the value thereof.

## Issue 1

Did the District Court's method of dividing the marital estate constitute an abuse of discretion?

> In apportioning a marital estate, a district court must
>
> finally equitably apportion between the parties the property and assets belonging to either or both, however

3

and whenever acquired and whether the title thereto is in the name of the husband or wife or both.

Section 40-4-202(1), MCA. This Court reviews findings of fact which divide marital property under a clearly erroneous standard. In re Marriage of Barker (1994), 264 Mont. 110, 113, 870 P.2d 86, 88.

Dianne states she does not dispute the amount of the court's division of property, but she challenges the delay in payment for her interest in the family home. She also objects that her interest in the home is unsecured and is contingent upon the balloon payment on the California property.

At the time of trial, the family home had not been appraised, but the parties agreed that each was entitled to half of its value and that Ray wanted to buy out Dianne's interest. The court determined that the home should be appraised and that the appraised value would be the sale price as between the parties. It ordered Ray to pay Dianne one half of the net equity, after first deducting the cost of the appraisal and the security interest against the home. Payment for Dianne's equity, together with interest at the rate of 5 percent per annum, is to be made when Ray "receives the balloon payment on the California property (in 1995 or 1996)."

As Dianne admits, her stake in the family home is not entirely unsecured--she has the court's order of dissolution. Further, the court specified that Ray will pay Dianne for her share of the value of the family home "in 1995 or 1996," and awarded her interest from the date she was required to move out of the home until she is paid for her interest in it.

4

Faced with the absence of an appraised value of the **family** home at the time of trial, the parties' agreement that each was entitled to half its value, and Ray's desire to buy out Dianne's interest in the home despite his disability and limited income, we conclude the court arrived at an equitable result. We hold that the District Court did not abuse its discretion in its division of the marital estate by failing to require Ray to pay Dianne immediately for her interest in the family home.

## Issue 2

Do the restrictions imposed against Dianne with respect to maintenance constitute an abuse of discretion?

Ray concedes this issue. In In re Marriage of Bross (1993), 256 Mont. 174, 180, 845 P.2d 728, 731-32, we stated that "[a]bsent a showing of changed circumstances which would justify a modification of maintenance, maintenance will not automatically terminate when a recipient spouse cohabits with another individual." We therefore vacate the provision of the District Court's order which provides that the maintenance obligation shall cease if Dianne "cohabits with another (for the greater portion of any six month period)."

## Issue 3

Is the award of maintenance to Dianne an abuse of discretion?

Under § 40-4-203, MCA, maintenance may be awarded only if the court finds that the spouse seeking maintenance (1) lacks sufficient property to provide for her reasonable needs, and (2) is unable to support herself through appropriate employment or is the

5

custodian of a child whose needs make it appropriate that the spouse not be required to seek employment outside the home. On cross-appeal, Ray argues that the District Court did not make the prerequisite findings to award maintenance.

When it is obvious from the findings and conclusions that the court considered the character of a spouse's property before granting a maintenance award, specific findings regarding the nature of the property are not required. In re Marriage of Cole (1988), 234 Mont. 352, 356, 763 P.2d 39, 42. Dianne's income-producing property appears to consist of her one-half interest in Ray's monthly disability benefit, or $233.38 per month. The itemized list of personal property which the District Court awarded to Dianne was not substantial and was not of a nature to provide support. There was no evidence that Dianne's interest in the ranch in Utica, Montana, was income-producing. And, as discussed above, the court delayed distributing to Dianne the cash representing her interest in the family home.

The court found that Dianne's income for the previous twelve months was $2,980.20, which was lower than in previous years because she lost time from work due to her double mastectomy. The court found that, based upon Dianne's average earnings for 1991 and 1992, her income is approximately $346 per month. By any reasonable standard, that is not enough to provide for her needs, which will include housing and health insurance. Given Dianne's recent surgeries, her age! and her work experience, it is clear without

additional findings that it may take some time for her to obtain more lucrative employment.

The court included in its findings, conclusions, and judgment a short memorandum stating:

> The Court is not unmindful of the efforts put forth by Dianne and the inconvenience occasioned to her by virtue of the presence of [Ray's mother], and this is reflected in the determination of maintenance.

While this memorandum does not address the factors which determine whether an award of maintenance is appropriate, we conclude that it is not a basis for reversal. We conclude that the findings discussed above address Dianne's lack of sufficient income-producing property to provide for her reasonable needs and her present inability to support herself through appropriate employment.

With the exception of the provision vacated under Issue 2, we affirm the decision of the District Court.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

7