No. 92-087

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

NORMAN JOSEPH ROCK,

       Petitioner and Respondent,

  and

SHARON D. ROCK,

       Respondent and Appellant.

**FILED**

APR 5 - 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Dennis E. Lind, Datsoupoulos, MacDonald
        & Lind, Missoula, Montana

    For Respondent:

        Raymond P. Tipp, Tipp, Frizzell & Buley,
        Missoula, Montana

Submitted on Briefs:  January 21, 1993

Decided:  April 5, 1993

Filed:

_____
       /Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Sharon D. Rock appeals from the findings of fact, conclusions of law, and decree of dissolution entered by the District Court of the Fourth Judicial District, Missoula County. At issue is the District Court's determination that a promissory note from respondent Norman Joseph Rock (Joe) to Sharon is null and unenforceable. Sharon also appeals from the District Court's division of the marital estate. We reverse.

We phrase the issues to be considered as follows:

1.   Did the District Court err in determining that the promissory note was a nullity?

2.   Was the District Court's division of the marital estate clearly erroneous?

The parties were married on December 26, 1980, in Missoula. No children were born during the marriage. Joe and Sharon had both been married previously. At the date of dissolution Joe was 62 years old and Sharon was 50 years old.

I.

Did the District Court err in determining that the promissory note was a nullity?

Upon reviewing a lower court's conclusions of law this Court will simply determine whether the lower court's interpretation of the law was correct. We are not bound by the trial court's conclusion and remain free to reach our own. Schaub v. Vita Rich Dairy (1989), 236 Mont. 389, 391, 770 P.2d 522, 523.

At issue is a promissory note for $59,000 from Joe to Sharon acknowledging that he owed her for the loan she obtained for him from the Ronan State Bank. The loan from the bank was secured by Sharon's home. The purpose of the loan was to refinance existing debts, such as a loan at the McKenzie Bank in North Dakota, and the lien on Joe's tractor and trailer at the Lewiston, Idaho bank. According to Joe's statements in the District Court transcript, both of these debts were his. Martin Olsson, loan officer at Ronan State Bank, stated that the bank had several previous loans of Joe's that were outstanding. These loans were for Joe's trucking company. The bank declined to give Joe another loan because of poor prior payment performance and inadequate collateral. Olsson stated that the use of Sharon's house as collateral was the primary reason for the bank approving the $59,000 loan.

Joe admitted in court that he signed the promissory note to Sharon upon her request. He acknowledged that both Sharon and he were responsible for the bank loan.

Joe now claims that the promissory note between Sharon and him is unenforceable as a negotiable instrument. He argues that it was signed in blank with no attached exhibit, and therefore, was incomplete, that there was no "sum certain," and that there was no consideration. We hold the lower court's interpretation of the law as to the validity of the promissory note was incorrect. Even though the note is not a valid negotiable instrument, it should be enforced by implying a contract at law to prevent Joe from being "unjustly enriched" as a result of his use of the $59,000 loan and

3

subsequent refusal to acknowledge the debt. Ragland v. Sheehan (Mont. 1993), 50 St. Rep. 83.

Joe would not have had access to the $59,000 loan if Sharon had not pledged her house as collateral. Sharon would not have done so without the understanding that Joe would continue to be obligated to the bank for the loan.

Joe claims that when he signed the promissory note he did not intend to consent to any obligation, but lack of consent is irrelevant to an implied contract: "An implied contract does not arise from the consent of the parties--it springs from the principle of natural justice and equity, based on the doctrine of unjust enrichment." Ragland, 50 St. Rep. 83 (citing St. James Community Hospital v. Dept. of Social and Rehabilitation Services (1979), 182 Mont. 80, 595 P.2d 379).

We hold that the promissory note at issue is enforceable as an implied contract at law. The District Court erred in determining that the promissory note was a nullity.

We reverse on this issue.

II.

Was the District Court's division of the marital estate clearly erroneous?

In the past, district court decisions concerning the division of the marital estate have been reviewed by this Court under an abuse of discretion standard. This Court's standard of review in these cases has been recently clarified. The factual findings of the district court relating to the division of marital property

4

will be reviewed using the clearly erroneous standard. In re Marriage of Sacry (1992), 253 Mont. 378, 833 P.2d 1035; Rule 52(a), M.R.Civ.P. Concerning this Court's review of conclusions of law made by a lower court "[w]e are not bound by the lower court's conclusions and remain free to reach our own." Schaub, 770 P.2d at 523.

The courts are obligated to fashion a distribution which is equitable to each party under the circumstances. In re Marriage of Jones (1987), 229 Mont. 128, 745 P.2d 350; § 40-4-202, MCA. Working in equity, the courts must seek a fair distribution of the marital property using reasonable judgment and relying on common sense. Reaching this equitable distribution will at times require the court to engage in discretionary action which cannot be accurately categorized as either a finding of fact or a conclusion of law. These discretionary judgments made by the trial court are presumed to be correct and will not be disturbed on appeal absent an abuse of discretion by the lower court. Meridian Minerals Co. v. Nicor Minerals, Inc. (1987), 228 Mont. 274, 742 P.2d 456.

Sharon's main contention on appeal is that the District Court was clearly erroneous in finding that her home was a marital asset which should be sold with the balance of the proceeds to be divided equally with Joe. Sharon contends that it was inequitable to award Joe one-half the balance of the proceeds from the sale when she owned the home free and clear early in the marriage. We agree. Section 40-4-202, MCA, provides that a district court shall:

5

[E]quitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both.

While the home may be considered part of the marital estate, the District Court's equal division of the home in this instance is inequitable. Section 40-4-202, MCA, requires equity, not equality. In re Marriage of Fitzmorris (1987), 229 Mont. 96, 745 P.2d 353. This equitable division of property must take into consideration the financial condition of each party at the time of marriage. In re Marriage of Summerfelt (1984), 212 Mont. 332, 688 P.2d 8. This Court recently stated that it was error for a district court to fail to credit a spouse with the value of a marital asset brought into the marriage. The District Court found that Sharon had $23,000 in equity in the home and had purchased her former husband's one-half interest in the home for $23,000. Joe did not contribute in any way to the value of the home at the time of the marriage.

Joe may be entitled to a portion of the appreciation in value of the home pursuant to § 40-4-202, MCA, provided that his contributions during the marriage contributed to the appreciation in value of the home.

The testimony at trial was that Joe contributed $99,000 over a six-year period to the maintenance of the household. On appeal Joe refers to this $99,000 as "extra money" he gave to Sharon "beyond the family's expenses and repairs . . . ." However, a careful review of the record indicates that this was Joe's total

6

financial contribution during the time period and was not in addition to other funds contributed to maintain the household.

Upon remand, the District Court shall consider the contributions of both parties to the maintenance and improvement of the home. The court shall consider to what extent this maintenance and any improvements may have contributed to the appreciation of value of the home.

The District Court also found that the failure to make payments on the mortgage debt caused a dissipation of the marital asset in the amount of $10,606. The loan obligation at the Ronan State Bank was a joint obligation, and any amount of dissipation of the marital asset must be attributed equally to both parties.

Many of the findings of fact in this matter are contradictory, are not supported by the evidence, and are not relevant to issues of this case. We will not address those.

Reversed and remanded to the District Court for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____

_____

Justices

8