No. 95-151

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

SHARON GAYLE WAITE,
f/k/a Sharon Gayle Greenlee,

     Petitioner and Appellant,

  and

ROGER WAYNE GREENLEE,

     Respondent and Respondent.

FILED

SEP 08 1995

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

       Kevin T. Sweeney, Sweeney & Healow,
Billings, Montana

    For Respondent:

       Robert J. Waller, Waller & Womack,
Billings, Montana


Submitted on Briefs:  July 13, 1995

Decided:  September 8, 1995

Filed:

Justice Terry N. Trieweiler delivered the opinion of the Court.

The appellant, Sharon Gayle Waite, filed a renewed motion for modification of decree of dissolution, a motion to determine dollar value of judgment, and a motion to determine judgment, in the District Court for the Thirteenth Judicial District in Yellowstone County in which she asked the District Court to change residential custody of the parties' minor son, modify the child support language found in the dissolution decree, and determine the amount the respondent, Roger Greenlee, owed her pursuant to the dissolution decree. The District Court granted Waite's motion for change of residential custody, established the child support Greenlee owed Waite, and denied Waite's motion for payment of income from Greenlee's partnership. Waite appeals the District Court's child support and partnership decisions. We affirm the order of the District Court.

Waite raises the following issues:

1. Did the District Court err when, for purposes of calculating child support, it did not consider Greenlee's passive income?

2. Did the District Court err when it failed to award Waite a share of Greenlee's passive partnership income?

FACTUAL BACKGROUND

Sharon Gayle Waite and Roger Wayne Greenlee are in what appears to be the final round of a twelve-round boxing match. By all accounts, Waite and Greenlee have still not removed their

2

gloves, tattered as they may be, and instead, continue throwing powerful head and body shots in an obvious attempt to reduce one another to vegetable matter. What follows is our attempt to referee the final round. *See In re Marriage of Greenlee* (1991), 249 Mont. 521, 816 P.2d 1073.

Greenlee is a dentist, and during the marriage entered into the Rose Park Professional Center Partnership with four other dentists. As a result, he became a one-fifth owner of the Rose Park Professional Center. The sole purpose of the Partnership is to "own, manage and maintain the Center, the building in which the partners maintain their offices." The partnership generates income by charging the partners and two non-partner tenants monthly rent, although it appears from the record that the two non-partner tenants pay an insubstantial amount of rent as compared to the partners. The partnership uses the monthly rent to make its regular mortgage payments and pay necessary expenses. At some point, the partners agreed that they would use all but $1,000 of each of the partner's yearly partnership distributions to make an additional payment on the mortgage in an effort to retire the debt owed for the Center at an early date.

On October 16, 1990, the District Court dissolved this couple's marriage, ordered joint custody, and designated Greenlee as the primary residential custodian of the two minor children, Jene' and Ryan.

Eventually, Waite moved the District Court to designate her the primary residential custodian of Ryan, and it did so. However, Waite and Greenlee were unable to agree on the amount of child support for which Greenlee was responsible. Therefore, the District Court held a hearing, following which it found that Greenlee had a net income in 1993 of $38,412, that he had interest income in 1993 of $733, and that he had a total distribution from the partnership in 1993 of $7,692, only $1,000 of which he actually received. The remaining $6,692 was classified by the partnership accountant as "passive income," on which Greenlee was taxed.

The District Court found that the funds distributed to Greenlee by the partnership represent a return of Greenlee's own contribution to the partnership made during the course of the year. In other words, Greenlee, through payment of rent, insured that at the end of each year, he would receive a distribution from the partnership, all but $1,000 of which the partnership would retain in order to more quickly pay off the mortgage on the Center. The District Court found that "it is not fair or reasonable to include the passive income portion of this distribution as income for child support purposes because it is not money over which Roger has any control." Therefore, the court found that Greenlee's gross income for child support purposes was $55,687, while his net income for child support purposes was $40,145.

The District Court found that the dissolution decree distributed Greenlee's interest in the partnership by awarding

4

50 percent to Greenlee and 50 percent to Waite. However, for the following reasons, the District Court found that Waite was not currently entitled to a share of the partnership distributions:

> (1) the dissolution decree provided for Waite to receive her interest only upon sale of the Rose Park Professional Center;
>
> (2) Waite benefits from the partnership retaining all but $1,000 of partnership distributions in order to reduce the debt owed on the Rose Park Professional Center;
>
> (3) the distribution represented a return of Greenlee's own contribution to the partnership, rather than income from an independent source, and;
>
> (4) the dissolution decree made it clear that Waite's interest in the partnership represents 50% of the expenses Greenlee paid to maintain his interest in the partnership.

The District Court concluded that Greenlee should pay $400 per month in child support from December 1993 through June 1994, and $473 per month until Ryan reached the age of 19 or graduated from high school, whichever occurred first. The court also concluded that Waite was not entitled to any part of the distributions Greenlee had received from the partnership since dissolution of the parties' marriage in October 1990.

## ISSUE 1

Did the District Court err when, for purposes of calculating child support, it did not consider Greenlee's passive income?

We have previously held that when reviewing modification of child custody we will review the district court's findings of fact to determine whether they are clearly erroneous. We will review

5

the district court's decision based on those findings of fact to determine whether the district court abused its discretion. *In re Marriage of Elser* (Mont. 1995), 895 P.2d 619, 622, 52 St. Rep. 434, 436. We conclude that the same standard of review is appropriate when considering a district court's award of child support.

Waite contends that the District Court incorrectly applied the Uniform Child Support Guidelines or, in the alternative, misapprehended the effect of the evidence concerning Greenlee's income from the partnership, and therefore, awarded insufficient child support. She claims that the correct application of the guidelines in this case required that the District Court designate any rent paid by Greenlee over the amount necessary to cover necessary partnership expenses as income. Instead, the District Court designated only $1,000 of the money annually returned to Greenlee as income for purposes of determining child support.

Waite points to the definition of "gross income" in the guidelines:

> "[G]ross income" for those who are self-employed, or who receive profits from a business enterprise such as . . . a partnership . . . includes gross receipts minus ordinary and necessary expenses for . . . business operation.

Rule 46.30.1508(c), ARM. Waite asserts that this definition, along with § 40-4-204(1) and (2), MCA, requires that we reverse the District Court's child support order.

Waite contends that because Greenlee elected, as a member of the partnership, to apply partnership profits to payment of the

6

mortgage on the Center, he cannot now claim that this income is unavailable to him to pay child support. She analogizes Greenlee's partnership decision to apply part of his income toward payment of the partnership mortgage to a "choice" to otherwise voluntarily invest his money. However, the analogy is not valid. The partnership's decision to apply its profits toward payment of the mortgage on the Center limited the extent to which Greenlee can "choose" to "invest" his portion of the partnership profits. Specifically, Greenlee can choose to invest only $1,000 of the partnership profits or, in other words, that portion that he actually receives.

Greenlee realizes only $1,000 of the rental income returned to the partners, which the court correctly identified as income for child support purposes. Moreover, Greenlee pays taxes on the full $7,692, even though he receives only $1,000.

Greenlee correctly asserts that the cases upon which Waite relies do not apply here because they all relate to parents who have chosen to earn less than they were capable of earning, while there is no indication in the record that Greenlee has a choice in this matter.

Based on our review of the record we agree and conclude that the District Court's findings are not clearly erroneous, and when it applied those findings to its calculation of child support, the District Court did not abuse its discretion. We affirm the District Court's child support award.

ISSUE 2

Did the District Court err when it failed to award Waite a share of Greenlee's passive partnership income?

We review the District Court's conclusions of law in relation to the division of marital property to determine whether the district court correctly interpreted the law. *In re Marriage of Rock* (1993), 257 Mont. 476, 480, 850 P.2d 296, 298 (citing *Schaub v. Vita Rich Dairy* (1989), 236 Mont. 389, 391, 770 P.2d 522, 523).

Waite contends that the District Court's failure to award her a share of Greenlee's partnership distribution "stood on its head" the language in the prior decree which apportioned and distributed the partnership interest.

In the decree of dissolution, the District Court divided the interest in the Center "50/50 between the parties." The court found that it could not give a specific market value for the Center, so instead, "equitably" divided it "50/50" between Waite and Greenlee. The court stated that Waite and Greenlee "will assume the risks involved with this investment, will receive the benefit of any tax consequences, any income or equity *upon sale of this property in the future*."

Waite emphasizes that the decree of dissolution states specifically that both she and Greenlee are to receive the benefit of "any income" from the partnership.

Waite contends that the District Court's ruling that she will not receive income from Greenlee's share of the partnership until

8

sale of the partnership is "utterly not true and not supported in the record." She initially asserts that the decree of dissolution specifically states that she will receive half of any income Greenlee generates from the partnership, and that the District Court's failure to award her 50 percent of this income alters the dissolution decree. Furthermore, Waite asserts that it defies "both rules of grammar and logic" to hold to the contrary.

Greenlee responds that the dissolution decree states plainly that income will not be shared until the time of sale of the partnership interest. We agree with this interpretation of the District Court's decree.

The District Court's dissolution clearly provided that Waite and Greenlee "will receive the benefit of . . . any income . . . upon sale of" the Center "in the future." The partnership has not sold the Center, and Greenlee has not sold his interest in the partnership. We conclude that the District Court was correct when it held that Waite was not entitled to a share of Greenlee's annual partnership distribution until sale of his partnership interest.

For these reasons, we affirm the order of the District Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10